**Ashraf Ishak Wasilidas TAWADROUS, Petitioner,**

v.

**Eric H. HOLDER, Jr.,\* Attorney General, Respondent.**

No. 08–1376.

United States Court of Appeals, First Circuit.

Submitted April 6, 2009.

Decided May 7, 2009.

---

\* Pursuant to Fed. R.App. P. 43(c)(2), Eric H. Holder, Jr. is substituted for former Attorney General Michael B. Mukasey as the respondent herein.

Saher J. Macarius, Audrey Botros and Law Offices of Saher J. Macarius, on brief for petitioner.

Gregory G. Katsas, Assistant Attorney General, Civil Division, Michelle Gorden Latour, Assistant Director and Joseph A. O'Connell, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, on brief for respondent.

Before BOUDIN and LIPEZ, Circuit Judges, and SINGAL,** District Judge.

SINGAL, District Judge.

Petitioner Ashraf Ishak Wasilidas Tawadrous seeks review of the Board of Immigration Appeals' ("BIA") denial of his untimely motion to reopen removal proceedings. The BIA concluded that the evidence proffered by Tawadrous in support of his motion did not establish changed conditions in Egypt, his country of origin. Discerning no abuse of discretion in the BIA's order, we deny the petition.

## I.

Tawadrous, a Coptic Christian, was admitted to the United States on December 24, 1999, with authorization to remain until November 30, 2001. He overstayed his visa. Consequently, Tawadrous was served with a Notice to Appear in removal proceedings, which commenced on September 4, 2002. At a hearing before an Immigration Judge ("IJ"), Tawadrous admitted the factual allegations contained in the Notice to Appear, conceded removability, and applied for asylum, withholding of removal, and protection under the Convention Against Torture. Testifying in support of his application, Tawadrous described a series of hostile encounters with Muslims while attending high school in his home-town and college in Cairo; being beaten severely by a group of Muslims after responding to their greeting with a traditional Christian reply; and a threatening rumor that he had impregnated a Muslim woman, which precipitated Tawadrous's immediate departure to the United States in 1999.

On March 15, 2005, the IJ concluded that Tawadrous had "failed to establish either a well-founded fear of persecution, a clear probability of persecution or a clear probability [of] torture in his home country," and thus denied the application. The IJ discounted Tawadrous's testimony regarding the beating as inconsistent with his American medical records. Moreover, the IJ determined that Tawadrous could relocate internally within Egypt to Cairo. Finally, the IJ found that Tawadrous had failed to demonstrate a likelihood that he would be tortured by anyone.

Tawadrous appealed the IJ's decision to the BIA, which affirmed without opinion on June 6, 2006. He then filed a petition for review in this court. Finding that the IJ's adverse credibility determination was adequately supported by the record, we denied the petition on April 3, 2007.

On October 22, 2007, more than sixteen months after the BIA rendered its summary affirmance, Tawadrous filed a motion to reopen his removal proceedings. Although such motions must typically be filed within ninety days of a final administrative decision, Tawadrous invoked an exception for motions that seek to introduce previously unavailable, material evidence of changed country conditions. Specifically, he submitted a letter from his father, who claimed that a "death sentence" awaits Tawadrous in Egypt. Tawadrous

** Of the District of Maine, sitting by designation.

maintained that the letter was previously unavailable due to his father's fear of the Egyptian government, and became available only after an individual named George E. George assured Tawadrous's father that it would be transported by hand to the United States. Tawadrous also offered recent State Department Reports and news articles.

On February 21, 2008, the BIA denied Tawadrous's motion to reopen as untimely. It concluded that the materials submitted did not demonstrate a material change in country conditions. Moreover, because Tawadrous had not submitted any evidence regarding the letter's method of transportation, such as an affidavit from George, the BIA found that the letter was not previously unavailable.

■ On March 24, 2008, Tawadrous filed the instant petition for review of the BIA's denial of his motion to reopen. That same day, he also filed a motion to reconsider with the BIA. In an effort to cure the infirmity previously diagnosed by the BIA, Tawadrous submitted an unauthenticated photocopy of a statement by George, among other materials. He did not, however, identify any material factual or legal errors that might justify reconsideration, and on July 22, 2008, the BIA denied the motion accordingly. Notably, Tawadrous never filed a petition for review challenging this decision; thus, we lack jurisdiction to review the BIA's denial of Tawadrous's motion to reconsider or to examine any materials submitted with it.[1] *Ven v. Ashcroft*, 386 F.3d 357, 359 (1st Cir.2004) (describing the need to timely appeal as a "strict jurisdictional requirement").

## II.

■ Motions to reopen removal proceedings, which seek to introduce previously unavailable, material evidence, "are disfavored due to the strong public interest in concluding litigation." *Ratnasingam v. Holder*, 556 F.3d 10, 15 (1st Cir. 2009); *see Ven*, 386 F.3d at 361 (alien seeking reopening bears a "heavy burden"). "Consequently, the BIA enjoys a broad measure of latitude in passing upon such motions," *Lemus v. Gonzales*, 489 F.3d 399, 401 (1st Cir.2007), and we review its decision exclusively for abuse of discretion. *Tandayu v. Mukasey*, 521 F.3d 97, 100 (1st Cir.2008). The BIA's denial of a motion to reopen will be upheld "unless the complaining party can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way." *Tandayu*, 521 F.3d at 100 (quoting *Raza v. Gonzales*, 484 F.3d 125, 127 (1st Cir.2007)).

■ Typically, a motion to reopen must be filed within ninety days of a final administrative decision. *See* 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). However, the BIA may waive "temporal bars to reopening if an alien makes a convincing demonstration of changed conditions in his homeland." *Raza*, 484 F.3d at 127; *see* 8 C.F.R. § 1003.2(c)(3)(ii). These changes must relate "to the underlying substantive relief that the alien is seeking," *Raza*, 484 F.3d at 127, and must be documented by material evidence that was previously unavailable. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. §§ 1003.2(c)(1), (3)(ii). Crucially, this evidence must demonstrate the intensification or deterioration of country conditions, not their mere continuation. *See Tandayu*, 521 F.3d at 100; *Lemus*, 489 F.3d at 401.

---

1. Those materials include the unauthenticated photocopy of George's statement, the 2007 State Department Country Report on Human Rights Practices, and a third document that dates from July 1998.

### III.

Tawadrous asserts that the BIA abused its discretion in concluding that the changed-conditions exception did not warrant reopening. Tawadrous principally relies on the letter submitted by his father, who insists that his son would face a "death sentence" were he to return to Egypt. This letter ostensibly became available only after Mr. George assured Tawadrous's father that it would be transported by hand to the United States from Egypt. Tawadrous also presented State Department Reports and news articles that, he claims, describe the increasingly perilous climate confronting Copts in Egypt. Finally, Tawadrous cites in his brief materials submitted with his motion to reconsider, including the unauthenticated photocopy of George's statement.

■ Because we consider only those materials submitted in conjunction with Tawadrous's motion to reopen, the letter from his father remains unaccompanied by any evidence establishing its prior unavailability. But even if we were to examine George's statement[2] and to find that the letter from Tawadrous's father was previously unavailable, we conclude that this evidence merely reiterates Tawadrous's hearing testimony without rehabilitating his failed credibility or documenting materially changed country conditions. *See Lemus,* 489 F.3d at 401. In short, the letter from Tawadrous's father is neither material nor novel.

■ Tawadrous also cites the 2006 State Department International Religious Freedom Report, which details two violent clashes in October 2005 and April 2006 between Muslims and Copts. However, the Report also indicates that "[m]embers of non-Muslim religious minorities officially recognized by the [Egyptian] Government generally worship without harassment and maintain links with coreligionists in other countries." *See also Awad v. Gonzales,* 463 F.3d 73, 77 (1st Cir.2006). Furthermore, the proffered news articles describe only the persistence of religious tensions that, unfortunately, we have had occasion to document before, *see Abdelmalek v. Mukasey,* 540 F.3d 19, 23 (1st Cir. 2008); in fact, several of these articles suggest that relations between Egyptian Muslims and Copts are generally peaceful despite sporadic violence. More significantly, Tawadrous has failed to offer any connection between this secondary evidence of episodic conflict and "his own individualized risk of harm." *Tandayu,* 521 F.3d at 101; *see Melhem v. Gonzales,* 500 F.3d 78, 82 (1st Cir.2007).[3]

In sum, we conclude that the BIA did not abuse its discretion in rejecting Tawadrous's untimely motion to reopen, and *deny* the petition for review.

---

2. We also concur with the BIA's assessment that George's statement is owed "little or no weight due to its nature as an unauthenticated photocopy."

3. Finally, Tawadrous points to five unpublished BIA orders reopening the removal proceedings of Egyptian Copt petitioners. Because he has not described the particular evidence of changed country conditions submitted in conjunction with those successful motions to reopen, Tawadrous's citation is unavailing.