**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 13-1294

HONG CHEN,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Howard, Lipez, and Thompson,
<u>Circuit Judges</u>.

Gerald Karikari on brief for petitioner.
Stuart F. Delery, Assistant Attorney General, Civil Division,
Jennifer L. Lightbody and Stefanie A. Svoren-Jay, Office of
Immigration Litigation, on brief for respondent.

March 14, 2014

**LIPEZ, Circuit Judge**.  Hong Chen, a native and citizen of the People's Republic of China, entered the United States without being admitted or paroled.  She was placed into removal proceedings and filed applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  An immigration judge ("IJ") denied Chen's applications for relief; the Board of Immigration Appeals ("BIA") subsequently dismissed her appeal.  Chen now petitions for review of the BIA's order.  Under the deferential standard of review we accord to the agency's factfinding, we deny the petition.

## I.

We briefly recount the facts as alleged by petitioner.[1] Hong Chen began to practice Christianity in 2008 while living in a small village in China.  In the summer of 2008, she regularly attended underground church meetings at her fellow villager's home. At least two of the meetings were broken up by the police.  When the police broke up a meeting on May 4, 2008, Chen was arrested and detained for three days.  Shortly thereafter, Chen left China for the United States.

After a year-long journey, Chen arrived in Hidalgo, Texas in September 2009.  One day after entering the country, she was detained and questioned by immigration officials.  Chen told the

---

[1] Because this appeal concerns the adequacy of an adverse credibility determination as to petitioner, we cannot simply rely on the facts as found by the IJ and the BIA.

border patrol agent -- who was questioning her in Mandarin -- that she had come to the United States to live and work in New York and that she feared returning to China because she did not have permission from the government to leave. She did not mention any religious persecution. On November 4, 2009, an asylum officer conducted a credible fear interview with Chen. She then mentioned, for the first time, practicing Christianity in China and being subject to police investigation as a result.

On November 10, 2009, removal proceedings were initiated against Chen pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I).[2] In responding to the charge that she did not possess a valid entry document, Chen admitted the factual allegations but expressed her intent to pursue asylum, withholding of removal, and CAT protection. At a hearing before an IJ, Chen testified about her involvement with the underground church in China and about her arrest. While in custody in China, the police demanded that she reveal the names of other church members. When she refused to do so, they beat her about the head with binders, causing bruising and swelling. She was released after three days when her family paid

---

[2] That provision deems ineligible for admission to the United States "any immigrant at the time of application for admission-- who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General."
8 U.S.C. § 1182(a)(7)(A)(i)(I).

5,000 yuan. She continued to attend the church after this incident. Although there was another incident when the police broke up a meeting of the underground church, she escaped without being arrested.

For impeachment purposes, the government introduced the Record of Sworn Statement from the initial interview of Chen by immigration officials in Texas. When confronted with the fact that she did not mention her fear of religious persecution, Chen responded that she was very afraid at the time of the interview and did not want to say anything.

At the hearing's end, the IJ issued an oral decision finding Chen removable and denying her application for asylum, withholding of removal, and CAT protection. The IJ denied her claims on the ground that Chen did not meet the burden of demonstrating past persecution or a well-founded fear of persecution on account of her religion. As the basis for that determination, the IJ found that Chen's testimony was not credible because it contradicted the statements she made to immigration officials upon entry into the United States.

Chen appealed the IJ's decision to the BIA. The BIA dismissed Chen's appeal. First, the BIA found that the IJ's credibility determination was not clearly erroneous because it was based on the discrepancies between Chen's testimony and her past statements as well as the inadequacy of her proffered excuse for

the discrepancies. Second, the BIA found that even if Chen was credible, there was insufficient evidence of past persecution or fear of future persecution. Specifically, the BIA noted that the three-day detention and associated physical abuse did not rise to the level of persecution. Finally, the BIA found that there was insufficient evidence of a clear probability of torture upon Chen's return to China. This timely appeal followed.

## II.

We review on appeal "the BIA's decision as well as any portions of the IJ's opinion adopted by the BIA." Peña-Beltre v. Holder, 622 F.3d 57, 61 (1st Cir. 2010). We examine the BIA's legal conclusions de novo and its factual findings under the substantial evidence standard, Soeung v. Holder, 677 F.3d 484, 487 (1st Cir. 2012), accepting the agency's factfinding unless the evidence "would compel a reasonable factfinder to reach a contrary conclusion," Seng v. Holder, 584 F.3d 13, 17 (1st Cir. 2009).

### A. Chen's Claims of Persecution

Chen contends that the agency erred in concluding that she was ineligible for asylum. A noncitizen seeking asylum "must establish his or her status as a refugee." Soeung, 677 F.3d at 487. A refugee is defined as a noncitizen who is unwilling or unable to return to her country of origin or seek that country's protection "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership

in a particular social group, or political opinion."  8 U.S.C. §
1101(a)(42)(A).  "A showing of past persecution gives rise to a
rebuttable presumption of future persecution."  Vanchurina v.
Holder, 619 F.3d 95, 99 (1st Cir. 2010).  Absent evidence of past
persecution, a petitioner must provide "'specific proof' that his
[or her] 'fear [of future persecution] is both subjectively genuine
and objectively reasonable.'"  Decky v. Holder, 587 F.3d 104, 110
(1st Cir. 2009) (quoting Castillo-Díaz v. Holder, 562 F.3d 23, 26
(1st Cir. 2009)).

### 1.  Credibility Determination

Chen bases her asylum claim on the alleged police
activities directed towards her and her underground church in
China.  The IJ heard her testimony recounting these events but
chose to discredit it. The BIA found that the IJ did not clearly
err in making that credibility determination.

In reviewing such a credibility determination, we assess
whether it is "'supported by reasonable, substantial, and probative
evidence on the record considered as a whole.'"  Bocova v.
Gonzales, 412 F.3d 257, 262 (1st Cir. 2005) (quoting INS v.
Elias-Zacarias, 502 U.S. 478, 481 (1992)).  We afford deference to
the IJ and BIA and will reverse a credibility determination only
when "any reasonable adjudicator would be compelled to conclude to
the contrary."  8 U.S.C. § 1252(b)(4)(B); see also Simo v.
Gonzales, 445 F.3d 7, 11 (1st Cir. 2006); Chen v. Gonzales, 418

F.3d 110, 113 (1st Cir. 2005).[3]  However, the IJ and the BIA "may not reject a petitioner's testimony as incredible without a specific, cogent, and supportable explanation."  Simo, 445 F.3d at 11.

Here, the BIA found that the inconsistencies between Chen's testimony at her removal hearing and her initial interview by immigration officials provided the IJ with a specific and cogent reason for finding her not credible.  The BIA further found that the IJ was entitled to find unconvincing Chen's brief explanation attributing her lack of full disclosure to fear.

When, as here, a petitioner proffers an explanation as to inconsistencies between her testimony before an IJ and earlier

---

[3] As we explained in Rivas-Mira v. Holder, 556 F.3d 1, 4 (1st Cir. 2009):

> Because h[er] application postdates the enactment of the REAL ID Act, Pub. L. 109-13, 119 Stat. 302 (2005), the credibility [determination] at issue here is subject to a provision of that Act, codified at 8 U.S.C. § 1158(b)(1)(B)(iii), rather than to the preexisting "heart of the matter" rule.  The earlier rule required that an adverse credibility finding be based on inconsistencies that pertain to facts central to the merits of the alien's claims. The new statute disavows that test; it provides that a factfinder may base a credibility determination on inconsistencies, inaccuracies, or falsehoods "without regard to whether [any such inconsistency, inaccuracy, or falsehood] goes to the heart of the applicant's claim." 8 U.S.C. § 1158 (b)(1)(B)(iii). We therefore proceed to evaluate the IJ's adverse credibility determination under that standard and in light of the totality of the circumstances.

Id. (citation omitted) (internal quotation marks omitted).

statements, an adverse credibility determination "must be evaluated in light of th[at] explanation . . . and of the rest of the evidence presented." Id. at 12. Chen tried to explain her failure to mention her religious persecution upon entering the country by merely stating that she was afraid. However, she also acknowledged that she believed she was safe from such persecution in the United States.

Chen further argues that any inconsistencies between her initial interview with border patrol agents and her testimony at the formal hearing cannot form the basis for an adverse credibility determination, primarily because the former were not reliable. She claims that the Record of Sworn Statement, which memorialized her initial interview with the border patrol agent, does not enjoy a "presumption of regularity," while the report of her asylum interview, which is when she first mentioned her practice of Christianity, does. We have previously held that the report of an asylum interview enjoys a "presumption of regularity" and, therefore, can be relied upon as an accurate account of what was said. See Pan v. Gonzales, 489 F.3d 80, 86 (1st Cir. 2007). To the extent that petitioner seeks to have us exclude the Record of Sworn Statement from consideration on the ground that it is somehow less reliable than the report of an asylum interview, we decline to do so. Chen neglected to raise this issue on appeal to the BIA. She cannot raise this issue here for the first time. Silva v.

Gonzales, 463 F.3d 68, 72 (1st Cir. 2006) ("Under the exhaustion of remedies doctrine, theories insufficiently developed before the BIA may not be raised before this court.").

Under the circumstances, we agree with the BIA that the IJ did not clearly err in finding Chen's brief explanation inadequate and discrediting her testimony based on the inconsistencies.[4]

### 2. Evidence of Persecution

The BIA found that even if Chen were deemed credible, the events she testified to did not rise to the level of persecution. We have held that a noncitizen must have experienced something more than "ordinary harassment, mistreatment, or suffering" to demonstrate persecution. Lopez de Hincapie v. Gonzales, 494 F.3d 213, 217 (1st Cir. 2007). "The severity, duration, and frequency of physical abuse are factors relevant to this determination, as is whether harm is systematic rather than reflective of a series of isolated incidents." Barsoum v. Holder, 617 F.3d 73, 79 (1st Cir. 2010) (citation omitted) (internal quotation marks omitted).

---

[4] Chen also argues that the statements at issue were not actually inconsistent, but rather incomplete. It is technically true that her failure to disclose her past persecution in response to questions about her reason for coming to the United States and her fear of returning to China may be more fairly categorized as a material omission. However, the IJ was nonetheless permitted to make reasonable inferences from that omission in determining her credibility.

Here, Chen testified to the slapping of her head and face with binders at two interrogation sessions that took place during Chen's three-day detention. Her testimony indicated that the injuries suffered from this incident were minor and did not require professional medical treatment.[5] We have previously held that although "it would be impermissible to make the presence or absence of injury requiring medical attention into a sort of 'acid test' for persecution," the BIA is entitled to rely on the severity of a petitioner's injuries in deciding whether she was subject to past persecution. Decky, 587 F.3d at 111 (quoting Topalli v. Gonzales, 417 F.3d 128, 132-33 (1st Cir. 2005)). Here, as in Decky, though the lack of severe injury is a relevant consideration, the dispositive factor is the absence of any evidence of systematic mistreatment of petitioner. See Decky, 587 F.3d at 111. Under the circumstances, the BIA did not err in concluding that petitioner did not suffer past persecution.

Without evidence of past persecution, Chen is not entitled to a presumption that she will face future persecution. Anacassus v. Holder, 602 F.3d 14, 21 (1st Cir. 2010). She may nonetheless "prevail on an asylum claim by proving, simpliciter, a well-founded fear of future persecution independent of any presumption [, which] . . . requires the alien to demonstrate that

_____

[5] She did recount one other incident when the police raided a church gathering, but she managed to avoid arrest and was not subsequently pursued by police.

h[er] fear of future persecution is both subjectively and objectively reasonable." Orelien v. Gonzales, 467 F.3d 67, 71 (1st Cir. 2006). We have said that a petitioner can meet this burden "through an offer of 'specific proof.'" Castillo-Díaz v. Holder, 562 F.3d 23, 26 (1st Cir. 2009) (quoting Romilus v. Ashcroft, 385 F.3d 1, 6 (1st Cir. 2004)). When the possibility of relocation within a petitioner's home country is at issue, such proof must demonstrate, among other things, that a petitioner "could not avoid future persecution by moving to another part of [her home country]."[6] Mejilla-Romero v. Holder, 600 F.3d 63, 75 (1st Cir. 2010), vacated on reh'g on other grounds, 614 F.3d 572 (2010).

As to likely future persecution, Chen put forth evidence both of general trends of persecution of Christians in China and of the situation in her own village. Chen also put forth evidence, in the form of a letter from her mother in China, that the police were specifically searching for her and threatened to arrest her upon her return.

---

[6] When a petitioner has successfully established past persecution, the government has the burden to show either "a fundamental change in circumstances in the country or the opportunity to relocate safely within it." Precetaj v. Holder, 649 F.3d 72, 75 (1st Cir. 2011) (citing 8 C.F.R. § 1208.13(b)(1)(i)). Here, without the benefit of the presumption created by evidence of past persecution, the petitioner has the burden on the issue of whether she would be able to safely relocate within her home country.

In response, the BIA relied upon the 2010 Department of State International Religious Freedom Report in concluding that there are areas of China where Chen could practice her religion openly without fear of persecution. In affirming previous BIA decisions finding a lack of sufficient evidence as to persecution of Christians in China, we have approved reliance on similar reports from the Department of State. See, e.g., Dong v. Holder, 696 F.3d 121, 127 (1st Cir. 2012) (quoting the 2008 Department of State Human Rights Report, which stated that "in some regions unregistered groups or house churches with hundreds of members [met] openly, with full knowledge of [the] authorities" (second alteration in original)); Zhang v. Holder, 330 Fed. App'x 201, 203 (1st Cir. 2009) (relying on 2005 Department of State Report on China for the proposition that the government's religious tolerance "varie[d] greatly," but that Protestantism was one of the five officially recognized religions and was rapidly growing).

The record as just described does not compel the conclusion that Chen could not practice her Christianity elsewhere in China; in fact, the BIA indicated that she could likely do just that. As we have repeatedly held, "[m]erely identifying alternative findings that could be supported by substantial evidence is insufficient to supplant the [IJ's] findings." Guaman-Loja v. Holder, 707 F.3d 119, 123 (1st Cir. 2013) (alteration in original)(quoting Albathani v. INS, 318 F.3d 365,

-12-

372 (1st Cir. 2003).  Accordingly, we discern no error in the BIA's conclusion as to future persecution.

**B.  Chen's Remaining Claims**

Because Chen has failed to demonstrate that she is eligible for asylum, her claims for withholding of removal and relief under CAT also fail.  See Singh v. Mukasey, 543 F.3d 1, 7 (1st Cir. 2008) (observing that claims for withholding and CAT protection "place a higher burden of proof on the petitioner than a counterpart claim for asylum" and stating that petitioner's failure to establish eligibility for asylum similarly doomed those claims); Barsoum, 617 F.3d at 80-81 (same).

The petition is denied.  **So ordered.**