# United States Court of Appeals
## For the First Circuit

No. 13-1024

NOVA FLORA MARSADU and ROLY RONDONUWU,

Petitioners,

v.

ERIC H. HOLDER, JR.,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Torruella and Kayatta, <u>Circuit Judges</u>.

<u>Thomas V. Massucci</u>, on brief for petitioners.
<u>Justin R. Markel</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, <u>Stuart F. Delery</u>, Acting Deputy Assistant Attorney General, Civil Division, Department of Justice, and <u>Carl H. McIntyre</u>, Assistant Director, Office of Immigration Litigation, on brief for respondent.

April 4, 2014

**TORRUELLA, Circuit Judge**.  Petitioners, Nova Flora Marsadu ("Marsadu") and Roly Rondonuwu ("Rondonuwu") (collectively, "Petitioners"), petition for review of the Board of Immigration Appeals' ("BIA") order denying their motion to reopen removal proceedings.  Specifically, Petitioners dispute the BIA's finding that they failed to demonstrate a prima facie case for asylum.  We disagree with Petitioners, and find that they have failed to demonstrate error sufficient to warrant reopening of their removal proceedings.  After careful consideration, we thus deny their petition for review.

## I. Background

Petitioners are both native citizens of Indonesia and are of the Christian faith.  They have been married since 1997; they have two children together, both of whom were born in the United States.  On April 22, 2001, the Department of Homeland Security ("DHS") admitted Rondonuwu as a nonimmigrant B-1 visitor with authorization to remain in the United States until July 21, 2001.  On May 7, 2002, the DHS admitted Marsadu as a nonimmigrant B-2 visitor with authorization to remain in the United States until November 6, 2002.

On February 21, 2003, Marsadu submitted an application for asylum, 8 U.S.C. § 1158(a), and withholding of removal, 8 U.S.C. § 1231(b)(3)(A), as well as for relief under Article 3 of the United Nations Convention Against Torture ("CAT"), all based on

her fears of being persecuted in Indonesia due to her Christian faith. On April 16, 2003, while Marsadu's application was pending, the DHS placed Rondonuwu in removal proceedings. On September 28, 2004, Rondonuwu filed an application for asylum, mirroring Marsadu's theory on her application for withholding of removal. Thereafter, on August 4, 2006, the DHS also placed Marsadu in removal proceedings. The Immigration Judge ("IJ") consolidated Petitioners' cases and after a hearing on the merits on April 26, 2007, denied all of their claims.

Subsequently, Petitioners filed a timely notice of appeal to the BIA. The BIA affirmed the IJ's decision, and denied Petitioners' appeal on March 13, 2009. Petitioners thereafter moved this court to review the BIA's denial of the appeal, and on October 30, 2009, we denied their request.

On July 9, 2012, Petitioners filed an untimely motion with the BIA to reopen removal proceedings, arguing that they are prima facie eligible for asylum due to recent changes in country conditions in Indonesia that put them at risk of persecution. Specifically, Petitioners argued that there had been a recent rise in violence in Indonesia led by radical Islamists against Christian minority groups, and that the Indonesian government had become increasingly tolerant of these attacks. To support their contentions, Petitioners relied heavily on an affidavit from Dr. Jeffrey A. Winters, Ph.D., an expert in Southeast Asian

-3-

political economy and comparative politics, with an emphasis on Indonesia.

On December 4, 2012, the BIA denied Petitioners' motion to reopen removal proceedings. The BIA concluded that Petitioners' evidence in support of their motion was insufficient to show "a change in conditions or circumstances in Indonesia material to [their] asylum claim." In particular, the BIA noted that: Petitioners' evidence was not individualized to reflect dangers posed specifically to them; Petitioners had failed to demonstrate a pattern or practice of persecution of Christians in Indonesia; and Petitioners did not demonstrate that attacks on Christians in Indonesia were a recent development, as such violence had been occurring at the time of Petitioners' 2007 asylum hearing. Therefore, the BIA concluded that Petitioners had failed to demonstrate a reasonable likelihood that they would face religious persecution if they returned to Indonesia. This petition followed.

## II. Discussion

A "denial of a motion to reopen will be upheld 'unless the complaining party can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way.'" Tawadrous v. Holder, 565 F.3d 35, 38 (1st Cir. 2009) (quoting Tandayu v. Mukasey, 521 F.3d 97, 100 (1st Cir. 2008)). In conducting this review, we accept the BIA's findings of fact, "as long as they are supported by substantial evidence," and

we review legal conclusions de novo. Smith v. Holder, 627 F.3d 427, 433 (1st Cir. 2010).

In general, "an alien may file only one motion to reopen removal proceedings . . . and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R. § 1003.2(c)(2). However, these limitations do not apply to motions to reopen proceedings "based on changed circumstances arising . . . in the country to which deportation has been ordered, if such evidence is material and was not available . . . at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii). A petitioner's evidence of "changed circumstances" must demonstrate an "intensification or deterioration of [his] country['s] conditions, not their mere continuation." Tawadrous, 565 F.3d at 38. Thus, a petitioner's motion to reopen must meet two threshold requirements: (1) it must establish "a prima facie case for the underlying substantive relief sought," and (2) it must introduce "previously unavailable material, evidence." Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir. 2003) (internal quotation marks omitted) (quoting I.N.S. v. Abudu, 485 U.S. 94, 104 (1988)).

For a petitioner to establish a prima facie case for asylum, he must show that he is "unable or unwilling" to return to his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality,

membership in a particular social group, or political opinion." 8 U.S.C. § 1101 (a)(42)(A). A petitioner may demonstrate his "well-founded fear of persecution" with evidence establishing a "reasonable likelihood" that he will face future persecution in his country, provided that his fears are both subjectively genuine and objectively reasonable. Smith, 627 F.3d at 437; 8 C.F.R. § 208.13 (b). To prove that his fears are objectively reasonable, a petitioner typically must either: (a) produce "credible, direct, and specific evidence supporting a fear of individualized persecution in the future," Li Sheng Wu v. Holder, 737 F.3d 829, 832 (1st Cir. 2013) (internal quotation marks omitted) (quoting Decky v. Holder, 587 F.3d 104, 112 (1st Cir. 2009)); or (b) he must "establish[] that there is a pattern or practice in his . . . country of nationality . . . of persecution of a group of persons similarly situated to the [petitioner] on account of race, religion, nationality, membership in a particular social group, or political opinion," 8 C.F.R. § 1208.13(b)(2)(iii)(A).

Petitioners marshal, essentially, three arguments on appeal. They argue that the BIA erroneously characterized the evidence of country conditions, that it was legal error for the BIA to require a showing of individualized risk of harm, and that the BIA incorrectly relied on our decision in Decky v. Holder, 587 F.3d 104 (1st Cir. 2009) for its finding that there is no ongoing

pattern of persecution against Christians in Indonesia. None of these theories holds water.

Petitioners' first argument, that the BIA erred in weighing and characterizing the evidence of changed country conditions, is twofold. Petitioners initially contend that the BIA was myopic in assessing country conditions in Indonesia, basing its decision only on the fact that country conditions were already difficult for Christians in 2007, when Petitioners first applied for asylum. They insist that the BIA should have assessed the deterioration of those conditions since 2007, up to the year 2012, as described in Dr. Winters's report.

A review of the record shows this precisely is what the BIA endeavored to do: the BIA compared Petitioners' evidence from the 2007 hearing with the newly proffered evidence, and noted that according to Dr. Winters, "from 2009 forward the level of violence and intolerance directed at religious minorities has increased at an alarming rate." The BIA concluded that these conditions did not differ significantly from those present in 2007. The BIA rested its decision on other evidence in the record, as well as parts of Dr. Winters's report, that indeed could support the conclusion that aggression by Muslim extremists against Christians and other minority groups was present to a similar degree in 2007. Ultimately, the BIA addressed the correct issue, examined all of the evidence of country conditions for the years 2007 through 2012

before it, and concluded that, notwithstanding Dr. Winters's take on the matter, Petitioners failed to show an "intensification or deterioration of country conditions." Tawadrous, 565 F.3d at 38. The BIA took into account the evidence before it, and found only a "mere continuation" of the same general conditions present in 2007. Id. On this record, we cannot hold that the BIA's conclusion constitutes an abuse of discretion.

Petitioners also claim that the BIA failed to properly address, and seriously mischaracterized, Dr. Winters's report. They complain that the BIA reduced the thirty-eight page report to a mere statement that radical Islamic groups had gained a foothold in Indonesia since 2004, and that acts of religious intolerance towards religious minorities, one of which Petitioners happen to belong to, had increased since 2009. This argument amounts to little more than a challenge to how the BIA weighed the evidence, and, for that reason alone, it is unavailing. Cf. Le Bin Zhu v. Holder, 622 F.3d 87, 92 (1st Cir. 2010) (holding that BIA was well within its discretion in not affording great evidentiary weight to letter submitted by petitioner for the purpose of showing changes in country conditions); see also Xiao Ji Chen v. U.S. Department of Justice, 471 F.3d 315, 342 (1st Cir. 2006) (explaining that the weight afforded to published reports of the Department of State lies largely within the discretion of the IJ). Furthermore, the BIA's description of the contents of that report is accurate,

however brief, and the BIA need not parse out its take on every evidentiary detail on record. Méndez-Barrera v. Holder, 602 F.3d 21, 25 (1st Cir. 2010). That Dr. Winters's report did not deliver a decision in their favor, and that the BIA's description of the report is more succinct than Petitioners would have preferred, does not entail a sufficient affront to the broad discretion we afford the BIA on motions to reopen. Le Bin Zhu, 622 F.3d at 91 ("the BIA enjoys a broad measure of latitude in passing upon" motions to reopen).

Even if Petitioners had shown a material change in Indonesia's conditions, they still would have needed to establish a prima facie case for asylum. Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir. 2003) (internal citation and quotations omitted) ("There are two threshold requirements for a motion to reopen: that it establish a prima facie case for the underlying substantive relief sought and that it introduce previously unavailable, material evidence."). Petitioners argue that the BIA erred as a matter of law by requiring that they show an individualized risk of harm if they were forced to return to Indonesia. Petitioners contend that they need not show any risk of individualized harm, and that they have made out a prima facie case for asylum by showing only that that there is an ongoing pattern of persecution against Christians in Indonesia. In other words, Petitioners argue that the BIA erroneously required Petitioners to establish an

individualized risk of harm, because regulatory provisions only require a showing of individualized risk of harm if -- and only if -- a pattern or practice of persecution cannot be established. Because, they assert, such a pattern is clear here, they need go no further.

Petitioners misstate the BIA's reasoning. Indeed, an asylum applicant need not necessarily show an individualized risk of harm in order to establish a prima facie case for asylum, and may succeed solely on a showing of fear of persecution based on membership in a particular social group. Tandayu v. Mukasey, 521 F.3d 97, 99 n.1 (1st. Cir. 2008)(citing Sharari v. Gonzáles, 407 F.3d 467, 474 (1st Cir. 2005)). Stated otherwise, absent a showing of individualized risk of harm, an asylum applicant can only succeed on a prima facie case if he shows a pattern of persecution against a particular social group to which he belongs. Kho v. Keisler, 505 F.3d 50, 54 n.3 (1st Cir. 2007).

That is precisely the analysis the BIA undertook. The BIA weighed the evidence, articulated that weight, and correctly found that Petitioners provided no proof of an individualized risk of harm -- which they do not dispute -- and only then proceeded to find that the evidence presented was also insufficient to establish a pattern of persecution against Christians in Indonesia. The BIA's conclusion is unremarkable, especially considering that the 'pattern or practice' standard "is demanding and in substance

-10-

requires a showing of regular and widespread persecution creating a likelihood of persecution of <u>all persons in the group</u>." <u>Rasiah</u> v. <u>Holder</u>, 589 F.3d 1, 5 (1st Cir. 2009) (internal citation omitted) (emphasis added).  Accordingly, the BIA did not err, and Petitioners' claim fails on this front as well.

Finally, Petitioners aver that the BIA abused its discretion by relying on purportedly irrelevant case law, namely the case of <u>Decky</u> v. <u>Holder</u>, 587 F.3d 104 (1st Cir. 2009).  In <u>Decky</u> we affirmed the BIA's denial of asylum, and similarly found that petitioners there had failed to demonstrate a pattern or practice of persecution against Christians in Indonesia. <u>Id.</u> at 113. Petitioners protest that the BIA improperly cited to <u>Decky</u>, a 2009 case, in support of its finding that there existed no pattern of persecution against Christians in Indonesia at the time Petitioners moved to reopen in 2012.  Petitioners contend that the court's findings in <u>Decky</u> regarding country conditions in Indonesia bear only upon the state of affairs in 2004 to 2005, the timeline relevant to the <u>Decky</u> petitioners' claim for withholding of removal. Petitioners thus argue that <u>Decky</u> is irrelevant to a determination of country conditions in Indonesia in 2012.

The citation to <u>Decky</u> follows the BIA's finding that Petitioners' evidence failed to show a pattern of persecution against Christians in Indonesia; the BIA provides no page citation. The citation is preceded by a signal, "[s]ee, e.g.", which, as

legal citation enthusiasts would explain, stands for the proposition that what immediately follows, serves as _exempli gratia_ of what was stated before. We need not tread the path of speculation, and find it rather obvious that the BIA's citation of _Decky_ was thus presented only as an example of a case where, as here, we have not found sufficient proof for a prima facie showing of a pattern of persecution. Accordingly, the BIA's use of _Decky_ was not legal error.

### III. Conclusion

The BIA is afforded quite a high level of deference when acting on motions to reopen removal proceedings. _Holder_, 622 F.3d at 91. Accordingly, we only meddle in the BIA's business where we find it has abused this ample discretion; an exceedingly high bar that Petitioners have failed to meet. Therefore, their petition for review is denied.

**DENIED.**