# United States Court of Appeals
## For the First Circuit

No. 12-1684

SUNARTO ANG,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Howard and Thompson, Circuit Judges.

Wei Jia and Law Office of Wei Jia on brief for petitioner.
        Janette L. Allen, Trial Attorney, Office of Immigration
Litigation, Civil Division, U.S. Department of Justice, Stuart F.
Delery, Principal Deputy Assistant Attorney General, Civil
Division, and Stephen J. Flynn, Assistant Director, Office of
Immigration Litigation, on brief for respondent.

July 10, 2013

**HOWARD, Circuit Judge**.  Sunarto Ang and his wife Tuti Erlina, who are citizens of Indonesia, seek review of a final order from the Board of Immigration Appeals (BIA).  Because no record evidence compels a different result than that espoused by the Immigration Court and upheld by the BIA, the petition for review is denied.

## I. Background

Ang and Erlina entered the United States on March 29, 2007 as nonimmigrant visitors with authorization to remain in the United States until September 28, 2007.  They overstayed their visas, and in late 2007 they applied to the Department of Homeland Security (DHS) for asylum.  In May 2008, DHS filed Notices to Appear with the Immigration Court, charging Ang and Erlina with removability under Section 237(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States for longer than permitted.  Ang and Erlina conceded removability, renewed their application for asylum, and applied for withholding of removal and protection under the Convention Against Torture.  They both testified before an Immigration Judge (IJ), who found their testimony credible.  We summarize this testimony below.

Ang was born in Indonesia to parents of Chinese ethnicity, and he followed Buddhism until his adulthood.  Ang's father owned a store where indigenous Muslims would demand money.  If Ang's father did not pay them, they would rummage the store.  In

-2-

1982, these Muslims beat Ang's father.  Because of this beating, Ang's mother fell sick.[1]  Ang's father reported the incident to the authorities, but "the police didn't come."

In 1988, Ang converted to Christianity.  That same year he met Erlina, and they were married in 1990.  Because Erlina was Muslim, Ang converted to Islam, but he was only "pretending" so that he could marry her.  During their marriage, Ang and Erlina attended church together.  Although they were not baptized at the time, they considered themselves Christians.  Since 1988, Ang has traveled outside of Indonesia and returned at least three times, following advice from friends that such travel would make it easier to obtain a visa to enter the United States.  Erlina joined Ang on one of these trips, to Malaysia.  Ang also traveled alone to Australia, but he did not apply for asylum there because he "didn't feel Australia was the right place for [him]."  Ang and Erlina have visas to enter South Korea as well, but they did not travel there.

In 1998, Ang and his father both owned stores that were burned in an anti-Chinese riot in Jakarta.  Ang tried to flee on a motorcycle, but the mob stopped him.  They took off his helmet and said, "Hey, this is Chinese.  Finish him.  Finish him."  Ang was stabbed in the lower back and pretended to be unconscious.  Later, a man helped Ang to the hospital, where he received stitches.  Ang

---

[1] According to Ang's application for asylum, his mother died a month later.

notified the police, who gave him a written report and later told him that they could not find the perpetrators. Ang's father was so shocked by the riots that he died about seven months later. Since 1998, nothing has happened to Ang or his family. His family remained in Indonesia after he left.

Erlina's family found out that she had converted to Christianity. In December 2006, shortly after their discovery, her family members beat, stepped on, and slapped Erlina, calling her an "undevoted child." Erlina's Muslim neighbors saw the incident but did nothing. Erlina did not call the police because she thought it would be wasteful, given that the majority of Indonesia's population is Muslim.

Ang and Erlina entered the United States in March 2007. They initially settled in Philadelphia and eventually moved to New Hampshire. Erlina's family calls her to threaten her into returning to Islam, and they often say that they want to kill her. Erlina feels that she will not get protection from the police if she returns to Indonesia because the police are sometimes afraid of Muslim groups. One of these groups, to which her family belongs, is Mohammed Deif, which terrorizes Christians.

After hearing this testimony, the IJ rejected Ang and Erlina's application for asylum, stating that the 1982 beating of Ang's father and the 1998 riot did not amount to persecution and did not involve government officials. The IJ said that the riot

-4-

was not a "persecutory incident targeting [Ang]" because he "happened to get caught up in the riot." The IJ also held that Erlina's single beating by her family did not rise to the level of persecution. The IJ held that Ang does not have a well-founded fear of future persecution, given his multiple trips to and from Indonesia, and that death threats from Erlina's family do not give Erlina a well-founded fear of future persecution either. The IJ's ruling relied in part on the State Department's Country Conditions Report and International Religious Freedom Report, which indicate that Christians are not subject to a pattern or practice of persecution in Indonesia, and that the Indonesian government generally respects religious freedom.

On appeal, the BIA issued an order agreeing with the IJ's conclusions, although it implied that the IJ's decision was erroneous to the extent that it implied that Ang's religion or ethnicity was not a reason for his attack in the 1998 riot. The BIA concluded, however, that this error would have been harmless because the attack did not constitute persecution. Finding no past persecution or well-founded fear of future persecution, the BIA dismissed the appeal. Ang and Erlina petitioned for review of the BIA's order.

## II. Analysis

Because the BIA's decision affirmed the IJ's decision and added its own analysis, we review both. Cabas v. Holder, 695 F.3d

-5-

169, 173 (1st Cir. 2012). We review the BIA's and IJ's factual conclusions under the deferential "substantial evidence" standard, reversing only if a "reasonable adjudicator would be compelled to conclude to the contrary." Khan v. Mukasey, 549 F.3d 573, 576 (1st Cir. 2008) (internal quotation marks omitted). Under this standard, we uphold the agency action so long as it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Wu v. Holder, 705 F.3d 1, 3-4 (1st Cir. 2013) (internal quotation marks omitted).

To establish eligibility for asylum, an alien must prove either past persecution, which gives rise to an inference of future persecution, or establish a well-founded fear of future persecution on account of his race, religion, nationality, membership in a social group, or political opinion. Sugiarto v. Holder, 586 F.3d 90, 94 (1st Cir. 2009); see 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i); 8 C.F.R. § 1208.13(b).

If an applicant establishes past persecution, there is a presumption of a well-founded fear of future persecution, and the burden shifts to the Government to rebut this presumption. 8 C.F.R. § 1208.13(b)(1); Sugiarto, 586 F.3d at 94. But even if the applicant cannot establish past persecution, he can nevertheless establish eligibility for asylum due to a well-founded fear of future persecution based on a protected ground. 8 C.F.R. § 1208.13(b). An applicant has a well-founded fear of persecution

-6-

in his country if he can establish that his fear is both subjectively genuine and objectively reasonable, meaning that a reasonable person in the applicant's circumstances would fear persecution. Sugiarto, 586 F.3d at 94; see 8 C.F.R. § 1208.13(b)(2). The regulations further provide that:

> [i]n evaluating whether the applicant has sustained the burden of proving that he or she has a well-founded fear of persecution, the . . . [IJ] shall not require the applicant to provide evidence that there is a reasonable possibility he or she would be singled out individually for persecution if . . . [t]he applicant establishes that there is a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and . . . [t]he applicant establishes his or her own inclusion in, and identification with, such group of persons such that his or her fear of persecution upon return is reasonable.

8 C.F.R. § 1208.13(b)(2)(iii).[2]

### A. Past Persecution

"Establishing persecution requires evidence of experiences surpassing 'unpleasantness, harassment, and even basic suffering.'" Kho v. Keisler, 505 F.3d 50, 57 (1st Cir. 2007) (quoting Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000)). One factor in determining whether persecution has occurred is the

---

[2] On petition for review, Ang and Erlina appear to have abandoned their claim that they are entitled to protection under the Convention Against Torture.

-7-

frequency of the alleged harm.  <u>Topalli</u> v. <u>Gonzales</u>, 417 F.3d 128, 133 (1st Cir. 2005); <u>see also</u> <u>Decky</u> v. <u>Holder</u>, 587 F.3d 104, 111 (1st Cir. 2009) (holding that a beating suffered in the 1998 Indonesian riots was an "isolated" incident).  Moreover, the applicant must show that the government participated in, or at least acquiesced in, the alleged harm.  <u>Decky</u>, 587 F.3d at 110.  To establish governmental acquiescence, "there must be some showing that the persecution is due to the government's unwillingness or inability to control the conduct of private actors."  <u>Jorqji</u> v. <u>Mukasey</u>, 514 F.3d 53, 57 (1st Cir. 2008).

Substantial evidence supported the BIA's and IJ's conclusion that Ang did not establish past persecution.  We acknowledge that Ang's stabbing must have been horrifying, and we will assume for the sake of argument that the beating of Ang's father was severe as well.  But these two events occurred sixteen years apart, with Ang's stabbing occurring nine years before he sought asylum in the United States.  These two incidents over the course of twenty-five years are too "isolated" to constitute persecution.  <u>See</u> <u>Decky</u>, 587 F.3d at 111.[3]  Moreover, substantial evidence supported the BIA's conclusion that "there was no government involvement [in the 1998 riots] to constitute persecution."  Ang did not establish that during the 1998 riots,

_____

[3] Although Ang testified that Muslims frequently harassed his father for money, an applicant for asylum must establish more than harassment.  <u>Kho</u> v. <u>Keisler</u>, 505 F.3d 50, 57 (1st Cir. 2007).

-8-

"police or other officials failed to protect him because of his ethnicity or religion."  Kho, 505 F.3d at 58.

Erlina's beating by her family also does not constitute persecution.  Again, while the beating itself must have been frightening and painful, it does not rise to the level of harm that amounts to persecution.  And there was no evidence of government involvement or acquiescence in the beating by family members.  Erlina's decision not to call the police based on her speculation that they would not protect her is not enough to show that the Indonesian government acquiesced in her mistreatment.  See Barsoum v. Holder, 617 F.3d 73, 79 (1st Cir. 2010) (decision not to report beating to police supported conclusion that the beating did not constitute persecution).

**B. Well-Founded Fear of Future Persecution**

Because they have not established past persecution, Ang and Erlina are eligible for asylum only if they can show that their fear of future persecution is both subjectively genuine and objectively reasonable.

The IJ and BIA concluded that Ang's fear of remaining in Indonesia was not subjectively genuine because he left Indonesia and returned three times before coming to the United States.  See Pakasi v. Holder, 577 F.3d 44, 48 (1st Cir. 2009) (departure from and return to Indonesia undermined petitioner's claim of fear of persecution). Nothing in the record compels a contrary conclusion.

The decisions of the IJ and BIA say little about Erlina's subjective fear of persecution, but even if we assume for the sake of argument that Erlina does have a genuine subjective fear of future persecution, that fear is not objectively reasonable. Erlina failed to establish that the Indonesian authorities cannot or will not protect her from her family. As to Ang and Erlina's more general allegations of the threat of future persecution, the IJ noted that "the [State Department's] Country Conditions Reports do not bear out that Christians are being subjected to a pattern or practice of persecution in Indonesia. The most recent International Religious Freedom Report indicates . . . that the government generally respected religious freedom . . . ." The BIA cited these reports as well. "We have repeatedly affirmed the BIA's determinations . . . that there is no ongoing pattern or practice of persecution against ethnic Chinese or Christians in Indonesia." Kho, 505 F.3d at 54. Ang and Erlina did file several articles and reports with the Immigration Court discussing the condition of ethnic Chinese and Christians in Indonesia, but the record as a whole does not compel a conclusion contrary to that of the BIA and IJ.

Because substantial evidence supports the IJ's and BIA's conclusion that Ang and Erlina lack a well-founded fear of future persecution, they cannot prove that they are eligible for asylum. For the same reason, they cannot meet the higher burden of proving

eligibility for withholding of removal.  <u>Touch</u> v. <u>Holder</u>, 568 F.3d 32, 41 (1st Cir. 2009).

### III. Conclusion

For the reasons given above, substantial evidence supported the conclusion of the IJ and the BIA that Ang and Erlina were not entitled to asylum.  The petition for review is **<u>denied</u>**.