# United States Court of Appeals
## For the First Circuit

No. 13-1582

KISHAN THAPALIYA,

Petitioner,

v.

ERIC H. HOLDER, JR., United States Attorney General,

Respondent.

PETITION FOR REVIEW FROM AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Stahl and Lipez,
Circuit Judges.

Steve J. Gutherz on brief for petitioner.
Stuart F. Delery, Assistant Attorney General, M. Jocelyn Lopez Wright, Senior Litigation Counsel, Office of Immigration Litigation, and Margot L. Carter, Trial Attorney, on brief for respondent.

April 24, 2014

**HOWARD**, <u>Circuit Judge</u>.  Petitioner Kishan Thapaliya, a native of Nepal, suffered a single beating by a group of Maoists in April 2003 and now challenges the decision of the Board of Immigration Appeals ("Board") which affirmed the Immigration Judge's ("IJ") denial of his request for asylum.  The record evidence does not compel a conclusion contrary to the agency's decision, even though the Maoists also may have threatened Thapaliya with a gun during the isolated event.  Accordingly, we deny the petition.

## I. Background

Thapaliya entered the United States from Nepal in August 2004 on a student visa.  Because he failed to carry a full course-load, the Department of Homeland Security eventually initiated removal proceedings against him.  Thapaliya conceded removability, and, in May 2010, sought asylum, withholding of removal, protection under the Convention Against Torture ("CAT"), and, alternatively, voluntary departure.

In support of his petition, Thapaliya presented evidence to the IJ regarding an incident that occurred in Nepal on April 15, 2003. According to his testimony, a number of armed Maoist-rebels came to his family's home that night looking for his father, who was an active member of an anti-Maoist political group.  Since their target was not home, the armed rebels set their sights on Thapaliya, who also was active in the anti-Maoist movement as a

student-member. Thapaliya testified that the men beat him severely and pointed a gun at him. When Thapaliya's brother tried to intervene, the Maoists beat him as well. Thapaliya suffered injuries to his head and chin, as well as bruising all over his body.

A little more than a year later, Thapaliya followed his father's advice and left Nepal. The rest of his family stayed behind. From the April 2003 incident to the time that he left for this country in August 2004, Thapaliya suffered no threats or further harm. According to Thapaliya, the Maoists later became part of the Nepalese government in 2006 and gained control of the government in 2008. Still, no harm has come to his family members, who have remained in Nepal.

Although crediting Thapaliya's account, the IJ denied the application for asylum. The IJ concluded that Thapaliya failed to establish that he was a victim of past persecution because the April 2003 event was isolated and the government neither participated nor acquiesced in it. The IJ further decided that Thapaliya had failed to demonstrate a well-founded fear of future persecution because (1) he remained in Nepal for over a year after the incident before coming to the United States without suffering any additional harm, and (2) his family (including his father) had not suffered any harm since the 2003 incident. The IJ concluded that Thapaliya also failed to establish a claim for either

-3-

withholding of removal or protection under CAT, and granted his alternative request for voluntary departure.

Thapaliya appealed to the Board, which affirmed the IJ's decision, largely reiterating the IJ's reasoning. The Board agreed that Thapaliya's claims did not establish past persecution and that he did not have a well-founded fear of future persecution. Like the IJ, the Board emphasized that Thapaliya remained unharmed in Nepal for more than a year after the April 2003 encounter, and that his family has resided in Nepal without incident since 2003 despite the Maoist government takeover in 2008. Accordingly, the Board affirmed the IJ's decision to deny his requests for asylum, withholding of removal, and protection under CAT. Thapaliya petitioned for review, challenging only the denial of asylum.[1]

---

[1]Thapaliya's brief is silent on CAT and, although it refers to withholding of removal, it offers no advocacy on that issue. Therefore, we consider these claims abandoned. See Anacassus v. Holder, 602 F.3d 14, 19 n.5 (1st Cir. 2010). In any event, an argument for withholding of removal would necessarily fail as well given our analysis on his asylum claim. See Stanciu v. Holder, 659 F.3d 203, 208 (1st Cir. 2011).

The IJ additionally concluded that Thapaliya's asylum application was untimely, rejecting his claim that material circumstances excused the delay. The Board expressly declined to address Thapaliya's challenge to this aspect of the IJ's decision, choosing instead to square up on the merits alone. Before us, Thapaliya continues to argue that the IJ erred in finding that his asylum application was untimely, which the government both dismisses as moot and further questions our jurisdiction to review the IJ's time bar conclusion. We, like the Board, center on the merits.

## II. Discussion

Where, as here, the Board "affirmed the IJ's ruling while discuss[ing] some of the bases for the IJ's opinion, we review both the IJ's and [the Board's] opinions." Costa v. Holder, 733 F.3d 13, 16 (1st Cir. 2013) (first alteration in original) (internal quotation marks omitted). The agency's factual conclusions are reviewed under the deferential "substantial evidence" standard, and, thus, we uphold the decision if "it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Sunarto Ang v. Holder, 723 F.3d 6, 10 (1st Cir. 2013) (internal quotation marks omitted). Reversal is warranted only "if a reasonable adjudicator would be compelled to conclude to the contrary." Id. (internal quotation marks omitted).

"As a prerequisite to asylum eligibility, an alien bears the burden of establishing that he is a refugee," which is defined as a "person who cannot or will not return to his country of nationality or avail himself of that country's protection because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Aguilar-Solis v. I.N.S., 168 F.3d 565, 569 (1st Cir. 1999) (internal quotation marks omitted). Thus, an alien must prove past persecution, which gives rise to an inference of future persecution, or otherwise establish a

well-founded fear of future persecution based on a protected ground.  Sunarto Ang, 723 F.3d at 10.  This frames our discussion.

**A. Past Persecution**

Thapaliya takes aim at the Board's decision that the single April 2003 event does not amount to past persecution.  Establishing past persecution, however, can be a "daunting task" for which petitioners "bear a heavy burden."  Butt v. Keisler, 506 F.3d 86, 90 (1st Cir. 2007) (alteration omitted) (internal quotation marks omitted).  "The baseline rule is that past persecution requires more than mere discomfiture, unpleasantness, harassment, or unfair treatment."  Id. at 90 (internal quotation marks omitted).  "The severity, duration, and frequency of physical abuse are factors relevant to this determination, as is whether harm is systematic rather than reflective of a series of isolated incidents."  Barsoum v. Holder, 617 F.3d 73, 79 (1st Cir. 2010) (citation and internal quotation marks omitted).  Accordingly, isolated beatings have been commonly rejected as grounds for persecution.  See Anacassus v. Holder, 602 F.3d 14, 19-20 (1st Cir. 2010)("'isolated beatings, even when rather severe, do not establish systematic mistreatment needed to show persecution'"); see also Hong Chen v. Holder, No. 13-1294, 2014 WL 983309, *4 (1st Cir. Mar. 14, 2014); Sunarto Ang, 723 F.3d at 11; Decky v. Holder, 587 F.3d 104, 111 (1st Cir. 2009); Bocova v. Gonzales, 412 F.3d 257, 263-64 (1st Cir. 2005),

superceded in part on other grounds as recognized by <u>Ivanov</u> v.
<u>Holder</u>, 736 F.3d 5, 20 (1st Cir. 2013).

Here, there is undisputed evidence that on one occasion a
group of Maoists beat Thapaliya fairly severely, apparently due to
his political affiliations. More than a year passed before
Thapaliya left Nepal, and during that time neither he nor his
family suffered such harm again. Thus, the singular April 2003
incident of violence seems to readily align with our precedent on
isolated beatings.[2] Thapaliya, however, contends that the Maoists
threatened his life during the violent episode and argues that a
death threat in the midst of a single act of violence is enough to
establish past persecution.

In the abstract, Thapaliya's position seems sound, as we have
held that credible, specific threats may rise to the level of
persecution in some circumstances if they are severe enough, and
"threats of murder fit squarely within this rubric."  <u>Javed</u> v.
<u>Holder</u>, 715 F.3d 391, 395-96 (1st Cir. 2013) (alteration omitted)
(internal quotation marks omitted); <u>see</u> <u>Amouri</u> v. <u>Holder</u>, 572 F.3d
29, 33 (1st Cir. 2009); <u>Hincapie</u> v. <u>Gonzales</u>, 494 F.3d 213, 217

---

[2]<u>See, e.g.</u>, <u>Sunarto Ang</u>, 723 F.3d at 11 (two incidents over
the course of twenty-five years, one stabbing and one beating, are
too isolated to constitute persecution); <u>Decky</u>, 587 F.3d at 111 (a
single severe beating during riots, without other systematic
mistreatment of comparable severity, support finding that the
beating was an isolated event, not persecution); <u>Bocova</u>, 412 F.3d
at 263 (two beatings by the police separated by more than two
years, one "relatively minor" and another "more severe," does not
compel a finding of persecution).

-7-

(1st Cir. 2007); <u>Un</u> v. <u>Gonzales</u>, 415 F.3d 205, 210 (1st Cir. 2005).
Considering whether the death threats are imminent is part of the
calculus, however. <u>See</u> <u>Javed</u>, 715 F.3d at 396; <u>Ravix</u> v. <u>Mukasey</u>,
552 F.3d 42, 46 (1st Cir. 2009) (per curiam). And, here, the IJ,
although crediting Thapaliya's account, noted that his description
of the event "was somewhat vague." In fact, the IJ did not render
findings suggesting that the attack by the Maoists involved a death
threat, and the role of the firearm during the beating is not
otherwise pellucid on the record. Instead, it appears that the
agency cast the April 2003 event as an isolated beating
insufficient to establish past persecution, which as we have said
is in keeping with our precedent.

Even assuming--as the petitioner suggests--that the agency saw
the use of the gun by the Maoists as an implied death threat, this
single threat during the single beating still is not enough to
compel a conclusion of past persecution on this record. <u>Compare</u>
<u>Javed</u>, 715 F.3d at 396 (specific, credible threats compelled a
finding of past persecution where "the Batore group" expressly
threatened to kill the petitioner on many occasions, the threats
were not isolated events and some were accompanied with violence,
his office was demolished "by the Batore-controlled local
government," the same group had shot people with whom the
petitioner was associated, and the threats continued even after he
fled Pakistan), <u>with</u> <u>Vilela</u> v. <u>Holder</u>, 620 F.3d 25, 29 (1st Cir.

2010) (sufficient evidence supported agency's conclusion that the repeated, clear death threats over the phone, while the "'most troubling' aspect" of the case, amounted to harassment rather than persecution); cf. Amouri, 572 F.3d at 33 (petitioner's experience involved clear "threats of murder" which "easily qualify as sufficiently severe harm"); Hincapie, 494 F.3d at 216-17 (series of threats of murder may amount to past persecution); Un, 415 F.3d at 209-10 (an "explicit death threat" combined with "perhaps one or more implicit ones" may fall within the meaning of persecution).

Because substantial evidence supports the agency's conclusion that Thapaliya did not establish past persecution, he is "not entitled to the rebuttable presumption that his fear of future persecution is well-founded." Anacassus, 602 F.3d at 21 (citing 8 C.F.R. § 208.13(b)(1)(I)).

## B. Well-Founded Fear of Future Persecution

Without the rebuttable presumption, Thapaliya is left to otherwise "demonstrate not only that [he] harbors a genuine fear of future persecution but also that [his] fear is objectively reasonable." Id. (alterations in original) (internal quotation marks omitted). On this record, the evidence does not compel a conclusion that any genuine subjective fear of future persecution that Thapaliya harbors is an objectively reasonable one.

Thapaliya did not leave Nepal until August 2004, over a year after the April 2003 event. He suffered no additional injuries or

threats during that time.  His family members, including his father as the initial target of the Maoists, have remained in Nepal and have not suffered any harm or threats since April 2003, though the Maoists apparently took control of the Nepalese government in 2008. "We have often echoed that the fact that close relatives continue to live peacefully in the alien's homeland undercuts the alien's claim that persecution awaits his return."  Lobo v. Holder, 684 F.3d 11, 19 (1st Cir. 2012) (alterations omitted) (internal quotation marks omitted); see Decky, 587 F.3d at 112-13; Ravix, 552 F.3d at 46; Santosa v. Mukasey, 528 F.3d 88, 93 (1st Cir. 2008); Sipayung v. Gonzales, 491 F.3d 18, 20-21 (1st Cir. 2007).  As such, substantial evidence supports the Board's decision regarding the lack of a well-founded fear of future persecution, and so we affirm the denial of asylum.

### III. Conclusion

Thapaliya's petition for review is **denied**.