# United States Court of Appeals
## For the First Circuit

No. 13-2269

MARLA PANOTO and ALAIN JUSOP WELLIAM RUNTUKAHU,

Petitioners,

v.

ERIC H. HOLDER, JR., United States Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Stahl and Barron, Circuit Judges.

Ilana Etkin Greenstein and Harvey Kaplan, on brief for petitioners.
Jane T. Schaffner, Trial Attorney, Office of Immigration Litigation, Civil Division, Department of Justice, Blair T. O'Connor, Assistant Director, Office of Immigration Litigation, and Stuart F. Delery, Assistant Attorney General, Civil Division, on brief for respondent.

October 22, 2014

**STAHL, Circuit Judge**.  Petitioner Marla Panoto and her husband,[1] both Indonesian citizens, petition for review of an order of the Board of Immigration Appeals ("BIA") affirming an order of an Immigration Judge ("IJ") denying her request for asylum. Because the BIA gave an insufficient explanation of why Panoto failed to demonstrate that she suffered past persecution in Indonesia, we grant her petition for review, vacate the BIA's order of removal, and remand the case for further proceedings.

## I.  Facts & Background

Panoto is a Christian from Indonesia, a predominantly Muslim country.  According to the IJ's decision,[2] Panoto testified that she experienced persecution as an Indonesian Christian and attributed the following incidents to her religious identity.

On Christmas Eve in 2000, a member of Panoto's congregation found a black box outside their church.  Police officers determined that the item was a bomb and removed it before

---

[1] Panoto's husband is a derivative applicant on her asylum petition and thus also a petitioner here.  8 U.S.C. § 1158(b)(3)(A).  His eligibility for asylum rises and falls on the status of Panoto's application.  Touch v. Holder, 568 F.3d 32, 36 n.1 (1st Cir. 2009).

[2] Because this Court allowed petitioners' assented-to motion for leave to waive filing an appendix, the record on appeal consists of only the IJ's oral ruling and the BIA's written decision.  While the parties' versions of the  facts incorporate evidence purportedly from the full administrative record,  our summary of the pertinent facts comes from the two documents in the limited record before us.

it could detonate.  Panoto testified that local authorities did not investigate the event further.

Approximately six months later, in June 2001, Panoto was riding on a ferry boat when it was hijacked by Muslim extremists. Once aboard, the hijackers shouted for the Christian passengers to come forward.  Panoto witnessed the militants slit an elderly Christian woman's throat, killing her.  One extremist then yanked Panoto by the hair and slapped her, commanding that she state her faith.  Panoto did not reply, and just as he was about to attack her, another hijacker called him away.

Petitioners left Indonesia shortly after the ferry hijacking, arriving in the United States at the end of September 2001.  The Department of Homeland Security initiated removal proceedings against them in 2007.  Panoto submitted her application for asylum in January 2011.

Both petitioners testified and submitted evidence at a removal proceeding on September 18, 2012.  In an oral decision issued the same day, the IJ deemed Panoto statutorily ineligible for asylum because she had failed to apply within one year of arrival and had not demonstrated circumstances affecting her ability to meet the filing deadline.  See 8 U.S.C. § 1158(a)(2)(B), (D).  The IJ observed that Panoto "manifested a penchant for misrepresent[ation] on asylum applications" by submitting an application for asylum under a false name in 2003 and providing

-3-

fraudulent documentation when she entered the United States in 2001. Assuming Panoto offered credible testimony about the bomb outside her church and the ferry incident, the IJ concluded that her account did not rise to the level of past persecution nor had she demonstrated that she would be persecuted if she returned to Indonesia. The IJ denied Panoto's application for asylum and granted her request for voluntary departure.

Panoto appealed to the BIA. Bypassing the IJ's timeliness and credibility determinations, the BIA presumed statutory eligibility and reached the merits of Panoto's application. The BIA agreed that Panoto's mistreatment, even if credited, did not involve harm severe enough to potentially constitute persecution and that she had failed to present probative evidence establishing a well-founded fear of future persecution. The Board affirmed the IJ's decision and dismissed Panoto's appeal. This petition for review followed.

## II. Analysis

Where the BIA affirms the IJ's ruling but adds its own discussion, we review both decisions. Lin v. Gonzales, 503 F.3d 4, 6-7 (1st Cir. 2007). We defer to the IJ's findings of fact and the agency's determination as to whether particular circumstances support a claim of persecution. Decky v. Holder, 587 F.3d 104, 109 (1st Cir. 2009). We will uphold a decision so long as it is "supported by reasonable, substantial, and probative evidence on

the record considered as a whole." Thapaliya v. Holder, 750 F.3d 56, 59 (1st Cir. 2014) (internal quotation marks omitted). On the other hand, we cannot conscientiously affirm the agency's determination if "the evidence point[s] unerringly in the opposite direction" such that a "reasonable adjudicator would be compelled to conclude to the contrary." Decky, 587 F.3d at 109 (internal quotation marks and citations omitted). Consequently, we must remand the case where the agency fails to offer legally sufficient bases for its determination. Sok v. Mukasey, 526 F.3d 48, 53 (1st Cir. 2008).

An applicant for asylum bears the burden of establishing past persecution or a well-founded fear of future persecution on account of one of five statutory grounds: race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A); Sunarto Ang v. Holder, 723 F.3d 6, 11–12 (1st Cir. 2013). The petitioner must establish a causal link between the harm she suffered or expects to suffer and her statutorily protected ground. 8 U.S.C. § 1158(b)(1)(B)(i). A showing of past persecution creates a rebuttable presumption that the applicant's fear of future persecution is well-founded. 8 C.F.R. § 208.13(b)(1); Sunarto Ang, 723 F.3d at 10.

No precise definition of "persecution" exists, and the question of what constitutes persecution is resolved on a case-by-case basis. Ruiz v. Mukasey, 526 F.3d 31, 36 (1st Cir. 2008). We

-5-

have repeatedly held that persecution, "as the term is used in the immigration law," involves a level of harm that "surpasses 'unpleasantness, harassment, and even basic suffering.'" Sombah v. Mukasey, 529 F.3d 49, 51 (1st Cir. 2008) (quoting Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000)).  After showing that the harm endured rises to that level, the applicant for asylum must further establish that government action or acquiescence caused or resulted in the mistreatment giving rise to her claim.  Orelien v. Gonzales, 467 F.3d 67, 72 (1st Cir. 2006).

Neither the IJ nor the BIA addressed the government's role, if any, in the two specific incidents of mistreatment that Panoto suffered.  Instead, the IJ and the BIA held that the mistreatment Panoto endured, even if credited, did not involve harm severe enough to constitute past persecution.  Making the same assumption of truthfulness as the IJ and BIA did, our question is whether learning that a bomb was planted outside one's place of worship and, six months later, experiencing a violent hijacking at the hand of anti-Christian extremists could involve harm acute enough to establish past persecution.  We conclude that these incidents are sufficiently extreme, close in time, and particularly targeted at Christians to clear the threshold.

We have held that bona fide threats of death can involve harm severe enough to constitute persecution.  Un v. Gonzáles, 415 F.3d 205, 209-10 (1st Cir. 2005) (remanding to agency for

-6-

reconsideration of past persecution finding where petitioner presented evidence of one "explicit death threat with perhaps one or more implicit ones"); cf. Amouri v. Holder, 572 F.3d 29, 33 (1st Cir. 2009) (observing that "threats of murder easily qualify as sufficiently severe harm" for purposes of persecution analysis). This is especially so when, as here, "the assailant threatens the petitioner with death, in person, and with a weapon." Sok, 526 F.3d at 54. Panoto presented testimony regarding two life-threatening events. Neither can be dismissed as a "hollow threat[]," Ang v. Gonzales, 430 F.3d 50, 56 (1st Cir. 2005), or merely "ugly, discriminatory, and regrettable," Susanto v. Gonzales, 439 F.3d 57, 60 (1st Cir. 2006). The Christmas Eve bomb planted at Panoto's church was a serious attempt to murder and inflict terror on parishioners. While Panoto ultimately suffered only minor physical injuries during the highjacking, she also witnessed the murder of a fellow Christian passenger in graphic fashion immediately before a militant seized Panoto and demanded to know her religion. Panoto reasonably understood that the militants intended to murder her next if she also identified as Christian. In determining whether an act or acts involve harm potentially rising to the level of persecution, the IJ and BIA must take a realistic and mindful look at what transpired.

These events occurred close in time to one another and shortly before the petitioners left Indonesia, in contrast to other

-7-

scenarios considered by this Court. For example, in <u>Sunarto Ang</u>, this Court affirmed the BIA's determination that an ethnically Chinese petitioner from Indonesia failed to show harm severe enough to establish past persecution where the petitioner testified that a group of Muslims beat his father in 1982 and a mob stabbed the petitioner during the 1998 Jakarta riots. 723 F.3d at 9. The two events, sixteen years removed from one another, were too isolated and sporadic to establish persecution, particularly where the petitioner suffered no further mistreatment in the nine years that he remained in Indonesia after the 1998 riots. <u>Id.</u> at 11; <u>see also</u> <u>Thapaliya</u>, 750 F.3d at 59 (holding that petitioner failed to establish past persecution based on a single attack which occurred one year before he left for the United States and noting, "isolated beatings have been commonly rejected as grounds for persecution"); <u>Kho</u> v. <u>Keisler</u>, 505 F.3d 50, 58 (1st Cir. 2007) (observing that petitioner's most recent proffer of anti-Christian conduct occurred three years before he left Indonesia). Here, the bomb threat and ferry seizure occurred within a six-month period, and Panoto fled to the United States approximately two months after the hijacking, so there is nothing in the record to suggest that these were mere isolated events as in <u>Sunarto Ang</u>.

Finally, assuming she is found credible on remand, Panoto sufficiently established a nexus between the incidents and her Christian faith. The timing and circumstances of these events are

particularly telling. The bomb was planted outside her particular place of worship on a Christian holiday and Muslim extremists specifically threatened Christians when they hijacked the ferry boat, killing a fellow Christian in Panoto's presence. Compare Sugiarto v. Holder, 586 F.3d 90, 95-96 (1st Cir. 2009) (petitioner failed to show that purported incidents of past persecution, a robbery and a bomb threat at a mall, were motivated by anti-Christian sentiment where her own conjecture provided the "sole basis for concluding that the perpetrators of the attack were Islamic terrorists, rather than common thieves"), with Sompotan v. Mukasey, 533 F.3d 63, 70-71 (1st Cir. 2008) (evidence supported conclusion that Jakarta rioters targeted petitioners' restaurant because it was located in a predominantly ethnic Chinese shopping district).

In sum, the past events endured by Panoto, if deemed credible,[3] surpass garden-variety unpleasantness and harassment such that she *could* meet the standard for past persecution, provided Panoto also demonstrates on remand that state action or inaction caused or resulted in her alleged harm. Because both the IJ and BIA erroneously concluded that Panoto did not experience

---

[3] The IJ raised serious concerns about Panoto's credibility based on various falsehoods underlying her 2001 visa and 2003 asylum application. Because both the IJ and BIA assumed that Panoto presented truthful testimony about the bomb and ferry incidents, we take no position on the reliabiilty of her account or her veracity in general.

harm severe enough to potentially rise to the level of past persecution, the agency did not afford her the benefit of the regulatory presumption of a well-founded fear of future prosecution.  See 8 C.F.R. § 208.13(b)(1).  Since the agency may find on remand that Panoto is entitled to such a presumption, we will not address this portion of the IJ's or BIA's decisions.

## III.  Conclusion

We conclude that the IJ's and BIA's legal conclusions are not supported by substantial evidence in the record and remand to the agency to make a well-reasoned determination as to Panoto's eligibility for asylum.  In doing so, the agency may choose to take additional evidence and argument from the parties.  Sok, 526 F.3d at 58.  The BIA, on remand, also may rest its decision on alternate grounds, such as the IJ's assessment of Panoto's credibility or the timeliness of her application.  The petition for review is GRANTED, the order of removal is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.