# United States Court of Appeals
## For the First Circuit

No. 15-1752

ELENA GRANADA-RUBIO; GERSON ELIAS MEJIA-GRANADOS;
C.M.M.G., a minor,

Petitioners,

v.

LORETTA E. LYNCH,
Attorney General of the United States,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Chief Judge,
Stahl and Lynch, Circuit Judges.

Hans J. Bremer and Bremer Law & Associates, LLC on brief for petitioners.

Alexander J. Lutz, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, and Anthony C. Payne, Assistant Director, Office of Immigration Litigation, on brief for respondent.

February 24, 2016

**Per curiam**.    Elena Granada-Rubio[1] and two of her sons, Gerson Elias Mejia-Granados and "C.M.M.G.," a minor, all natives and citizens of El Salvador, petition for review of a May 29, 2015, order of the Board of Immigration Appeals ("BIA").  The BIA order affirmed an Immigration Judge's ("IJ") decision to deny Granada-Rubio's asylum application, of which her sons were derivative beneficiaries, as well as her requests for withholding of removal and protection under the Convention Against Torture ("CAT").  We deny the petition.

## I.

Granada-Rubio, Mejia-Granados, and C.M.M.G. illegally entered the United States, as admitted in responses to Notices to Appear served in December 2011.  Granada-Rubio applied for asylum for herself and her two sons, as well as withholding of removal and protection under the CAT.[2]  In the application, Granada-Rubio described receiving phone calls in October 2011, while she was living in El Salvador, from a member of the Mara Salvatrucha ("MS-13") gang who asked for money and "said he knew that [her] husband was living in the United States and that if [she] did not cooperate

---

[1]    On her asylum application, her name appears as "Elena Isabel Granados de Mejia."  We refer to her as "Granada-Rubio" to maintain consistency with the petition for review filed with this court.

[2]    Granada-Rubio has a third son who was not included in the application.

with him he was going to kill [her] and [her] three children." The application stated that Granada-Rubio is "afraid to return to [her] country because [she] honestly believe[s] that [she] will be either injured or tortured or killed by this gang and the government will do nothing to protect [her]."

At a November 8, 2013, hearing before an IJ, Granada-Rubio testified to the following events.[3] On October 25, 2011, someone who identified himself as being from the MS-13 gang called Granada-Rubio at her house, said that he knew her husband and her children, and said that he knew her husband was in the United States. The caller demanded $500 a month "as rent" and threatened to kill her or her children if she did not comply. Granada-Rubio said that she could not give him that amount of money. The caller replied by asking if she loves her children and said that if she did not comply she "knew what was going to happen to them." The caller also said that if Granada-Rubio told the police, "things would get even worse." Granada-Rubio did not call the police "because sometimes the police are even part of the same thing . . . [and] [s]ometimes they will report things that have been said to them because they're also afraid." Granada-Rubio disconnected her

_____

[3] Granada-Rubio's case was consolidated with those of her two sons; they are included on her I-589 Application for Asylum and for Withholding of Removal as "Asylum Derivative[s]." The sons remained outside the hearing room during the November 8, 2013, hearing.

phone, but the caller called again after she reconnected it. On November 10, 2011, Granada-Rubio left El Salvador with her children for the United States because "she was afraid for [her] life." She believes that if she returns to El Salvador, members of the MS-13 gang will torture or target her.

The IJ issued an oral decision denying Granada-Rubio's application for relief and ordering her and her sons removed to El Salvador. The IJ concluded that Granada-Rubio had failed to establish past persecution based on a protected ground and that Granada-Rubio's "fear of victimization by gang members for economic reasons will not support a claim of persecution as members of a particular social group because there is nothing to differentiate members of such a group from other persons in the general populace who have been or might become victims of crime." The IJ also explained that Granada-Rubio fails to qualify for CAT protection "because the record does not establish a clear likelihood that a public official in El Salvador would likely acquiesce in or exhibit willful blindness toward any torture inflicted by gang members that the respondent fears."

The BIA affirmed the IJ's determinations and dismissed Granada-Rubio's appeal on May 29, 2015. This petition for review followed. We discuss the BIA's reasoning below.

II.

"Where the BIA affirms the IJ's ruling but adds its own discussion, we review both decisions." Panoto v. Holder, 770 F.3d 43, 46 (1st Cir. 2014). "We will uphold a decision so long as it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id. (quoting Thapaliya v. Holder, 750 F.3d 56, 59 (1st Cir. 2014)). "That the record supports a conclusion contrary to that reached by the BIA is not enough to warrant upsetting the BIA's view of the matter; for that to occur, the record must compel the contrary conclusion." Lopez de Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007). We review questions of law de novo. Ziu v. Gonzales, 412 F.3d 202, 204 (1st Cir. 2005) (per curiam).

A.   Asylum and Withholding of Removal

To qualify for asylum, an alien must establish, inter alia, that she is unwilling or unable to return to her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); see 8 U.S.C. § 1158(b)(1). The BIA agreed with the IJ's conclusions that (a) Granada-Rubio did not establish persecution, and (b) Granada-Rubio did not establish that she was part of "a particular social group for asylum purposes." Either of these conclusions would be sufficient to support a denial of Granada-Rubio's asylum

- 5 -

application.  See 8 U.S.C. § 1101(a)(42).  Assuming, arguendo, that Granada-Rubio established that she has faced or will face persecution, the IJ and the BIA were warranted in finding that Granada-Rubio has not been persecuted based on her membership in a legally cognizable particular social group.

"To prove persecution on account of membership in a particular social group, an alien must show at a bare minimum that she is a member of a legally cognizable social group."  Mendez-Barrera v. Holder, 602 F.3d 21, 25 (1st Cir. 2010).  "[A]n applicant seeking asylum or withholding of removal 'based on "membership in a particular social group" must establish that the group is: (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question.'"  Paiz-Morales v. Lynch, 795 F.3d 238, 244 (1st Cir. 2015) (quoting Matter of M–E–V–G–, 26 I. & N. Dec. 227, 237 (BIA 2014)).

Granada-Rubio, as lead respondent, argued to the BIA that "the MS-13 is targeting her because they know that she is married to a man who is living and working in the United States and therefore, has the capacity to pay the $500 monthly. [Granada-Rubio] is a target because she is a member of a particular group . . . ."  Granada-Rubio[4] argues to us that she is "a member

---

[4] Here and going forward, we use "Granada-Rubio" to refer to Granada-Rubio, Mejia-Granados, and C.M.M.G., unless specified

of a particular social group of women with children whose husband[s] live and work in the U.S. and it is known to society as a whole that the husbands live in the U.S." To the extent the social group proposed now was not proposed to the BIA, it is unexhausted. See Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004) ("[T]heories not advanced before the BIA may not be surfaced for the first time in a petition for judicial review of the BIA's final order.").

Addressing the extent of Granada-Rubio's claim that is exhausted, the BIA supportably found that she has not presented evidence that such a proposed group is socially distinct. See Matter of M-E-V-G-, 26 I. & N. Dec. at 238 ("[T]he 'social distinction' requirement considers whether those with a common immutable characteristic are set apart, or distinct, from other persons within the society in some significant way. In other words, if the common immutable characteristic were known, those with the characteristic in the society in question would be meaningfully distinguished from those who do not have it."); Matter of W-G-R-, 26 I. & N. Dec. 208, 217 (BIA 2014) ("To have the 'social distinction' necessary to establish a particular social

_____

otherwise, as all three have petitioned for review. The government maintains that Granada-Rubio's sons are derivative beneficiaries of only her asylum claim, not of her withholding of removal and CAT protection claims. Because we deny the petition, we need not reach this question.

group, there must be evidence showing that society in general perceives, considers, or recognizes persons sharing the particular characteristic to be a group.").

Indeed, court precedent supports the BIA's conclusion. See Beltrand-Alas v. Holder, 689 F.3d 90, 94 (1st Cir. 2012) (rejecting petitioner's "argument that he would likely be subject to persecution because he may be deemed wealthy because of his status as a returning expatriate from the United States," and explaining that "we have rejected proposed social groups 'based solely on perceived wealth, even if signaling an increased vulnerability to crime,' . . . regardless of why one is perceived as wealthy" (quoting Garcia-Callejas v. Holder, 666 F.3d 828, 830 (1st Cir. 2012) (per curiam))); Sicaju-Diaz v. Holder, 663 F.3d 1, 4 (1st Cir. 2011) ("[A] class of persons identified partly based on comparative wealth could be the subject of persecution on the basis of that status. . . . But being part of a landowning class is quite different than happening to be wealthy or perceived to be wealthy because of owning a large house, belonging to a well known family or 'returning to Guatemala after a lengthy residence in the United States.'").

Because Granada-Rubio does not qualify for asylum, she also does not qualify for withholding of removal. See Ang v. Gonzales, 430 F.3d 50, 58 (1st Cir. 2005); Makhoul, 387 F.3d at 82 ("A claim for withholding of deportation demands that the alien

carry a more stringent burden of proof than does an asylum claim. . . . Thus, if an alien cannot establish asylum eligibility, his claim for withholding of deportation fails a fortiori." (citing 8 U.S.C. § 1231(b)(3)(A))).

B.    Protection Under the CAT

Granada-Rubio's claim for protection under the CAT fails as well.  The IJ and the BIA noted, with support in the record, that Granada-Rubio has not shown that she will be subject to torture through the acquiescence or willful blindness of a public official.  See Aldana-Ramos v. Holder, 757 F.3d 9, 19 (1st Cir. 2014) ("A petitioner seeking CAT protection must show 'it is more likely than not' that he would be subject to torture 'by or with the acquiescence of a government official.'" (quoting Nako v. Holder, 611 F.3d 45, 50 (1st Cir. 2010))); 8 C.F.R. § 1208.18(a)(1) (explaining that under the CAT, "[t]orture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity").

Neither Granada-Rubio's testimony, that "sometimes the police are even part of the same thing . . . . Sometimes they will report things that have been said to them because they're also afraid. . . . Sometimes they just don't help you," nor the

- 9 -

country report she submitted is sufficient to support a claim of government acquiescence. The country report she submitted includes that there have been complaints of torture and "cruel, inhumane, or degrading treatment or punishment perpetrated by public officials," and that the government of El Salvador has not effectively implemented the criminal penalties for public corruption. However, this report does not compel the conclusion that Granada-Rubio will have "pain or suffering . . . inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," 8 C.F.R. § 1208.18(a)(1); see also Makieh v. Holder, 572 F.3d 37, 44 (1st Cir. 2009) (evaluating a claim for CAT protection and explaining that "the administrative record does not . . . support a conclusion contrary to that reached by the agency, much less compel a contrary conclusion").[5]

The petition for review is denied.

---

[5] Granada-Rubio also argues that "[e]quity, fairness, and the spirit behind our immigration laws call this Honorable Court to grant [Granada-Rubio] asylum." However, Congress has specified that there are only certain conditions under which the Secretary of Homeland Security or the Attorney General can grant asylum. See 8 U.S.C. § 1158(b).