**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 15, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

JASWINDER SINGH,

    Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

    Respondent.

No. 21-9553
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **BALDOCK**, and **EID**, Circuit Judges.
_____

Jaswinder Singh, a native and citizen of India, petitions for review of a decision by the Board of Immigration Appeals (Board or BIA) affirming the denial of his applications for asylum, withholding of removal, and relief under the Convention Against Torture (CAT).  Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny the petition.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

### I.       Underlying Facts

Mr. Singh, a Sikh, is from the Indian state of Punjab and a member of the Shiromani Akali Dal or Akali Dal Mann party (the Mann party).  The Aklai Dal Badal party (the Badal party) controlled the government.

While Mr. Singh and another man were hanging posters for the Mann party, they were approached by four or five men who identified themselves as members of the Badal party.  The men had regular clothes on, with their faces covered.  They told Mr. Singh and his companion to stop hanging the posters.  Although the other man was able to run away, the Badal party members threw Mr. Singh to the ground and punched and kicked him.  One kick came near his eye.  He was close to passing out, but he regained his senses and some boys helped him home.  He did not go to a hospital because he was afraid of the Badal party.  Instead he stayed for ten to twelve days with his grandmother, who treated him with traditional remedies, including putting turmeric on some of his wounds and using hot and cold treatments. Mr. Singh did not have any broken bones, but he experienced pain from his injuries, including pain in his eye area.

A couple of days after the attack, Mr. Singh went to a shop for some medicines for pain and trouble sleeping.  He later took more pills for the pain, but he never had any other medical treatment.  At one point he also went to file a police report, but the police would not take his report and gave him the impression that they did not care about the attack.  Mr. Singh left India about two months after the beating.  His wife

and parents, who remained in India, have told him that people have come to inquire about him.

## II.    Legal Standards

For asylum, a petitioner must establish he is a refugee.  *See* 8 U.S.C. § 1158(b)(1)(A).  A refugee is a person who is "unable or unwilling to return to the country of origin 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'"  *Rivera-Barrientos v. Holder*, 666 F.3d 641, 645-46 (10th Cir. 2012) (quoting 8 U.S.C. § 1101(a)(42)(A)) (emphasis omitted).  "Persecution is the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and must entail more than just restrictions or threats to life and liberty."  *Ritonga v. Holder*, 633 F.3d 971, 975 (10th Cir. 2011) (internal quotation marks omitted).  "[P]ersecution may be inflicted by the government itself, or by a non-governmental group that the government is unwilling or unable to control."  *Id.* (quotations omitted).

The standard for withholding of removal is "more stringent" than that for asylum.  *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012).  "To be eligible for withholding of removal, an applicant must demonstrate that there is a clear probability of persecution because of his race, religion, nationality, membership in a particular social group, or political opinion."  *Id.* (internal quotation marks omitted).  And "[t]o be eligible for relief under the CAT, an individual must establish that it is more likely than not that he or she would be tortured if removed to the

proposed country of removal." *Id.* at 1233-34 (quotations omitted). Such torture must be by a government official or with governmental consent or acquiescence. *See* 8 C.F.R. § 1208.18(a)(1).

### III.    Agency Proceedings

Mr. Singh's Notice to Appear (NTA) had not specified the date and time of his hearing, but a second notice provided that information. The immigration judge (IJ) rejected Mr. Singh's contention that the immigration court lacked jurisdiction to conduct the proceedings because of the defective NTA. He found Mr. Singh to be "a generally credible witness" and assigned "full evidentiary weight" to his testimony. Admin. R., Vol. 1 at 87. But he denied the applications for asylum and withholding of removal, finding that the incident and injuries Mr. Singh described did not rise to the level of persecution and did not involve government actors, placing on him the burden to show that it would be unreasonable for him to relocate within India. The IJ further held that he had not satisfied that burden. As for the CAT, the IJ found that Mr. Singh had failed to show the attack rose to the level of torture or involved a governmental official or governmental acquiescence. He also found that Mr. Singh could relocate within India to avoid fear of torture.

The Board rejected Mr. Singh's contention that the IJ lacked jurisdiction to conduct the proceedings because the NTA was defective. It upheld the IJ's findings that Mr. Singh failed to show past persecution or a well-founded fear of future persecution, holding that the attack in India did not rise to the level of persecution; the IJ did not clearly err in finding the attackers were private actors; and the IJ

4

committed no legal or clear factual error in determining that Mr. Singh could relocate within India. The Board therefore upheld the denial of asylum and withholding of removal. Further, it held that Mr. Singh had waived his CAT claims by failing to brief them on appeal.

## DISCUSSION

### I.     Standards of Review

"Because a three-member panel issued the BIA's opinion, we review that opinion rather than the IJ's oral decision." *Kabba v. Mukasey*, 530 F.3d 1239, 1244 (10th Cir. 2008). With regard to asylum and withholding of removal, we review legal questions de novo and findings of fact for substantial evidence. *Id.* And we review the denial of CAT relief for substantial evidence. *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020). Under the substantial-evidence standard, "[t]he agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

### II.    Notice to Appear

Mr. Singh asserts that because his NTA did not specify the date and time of the hearing, the IJ lacked jurisdiction to conduct his removal proceeding. This court, however, has held that a defective NTA does not present a jurisdictional issue. *See Martinez-Perez v. Barr*, 947 F.3d 1273, 1278 (10th Cir. 2020); *Lopez-Munoz v. Barr*, 941 F.3d 1013, 1015-18 (10th Cir. 2019).

One panel of this court is bound by the decisions of other panels absent an intervening Supreme Court or en banc decision. *See Ting Xue v. Lynch*, 846 F.3d

5

1099, 1104 (10th Cir. 2017).  The only potentially relevant decision that Mr. Singh identifies is *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021).  But *Niz-Chavez* addressed the effect of a defective NTA on the stop-time rule for cancellation of removal, not the agency's jurisdiction.  *See id.* at 1478-79.  We therefore cannot conclude that it overruled *Martinez-Perez* and *Lopez-Munoz*.  *See, e.g.*, *Chery v. Garland*, 16 F.4th 980, 987 (2d Cir. 2021); *Ramos Rafael v. Garland*, 15 F.4th 797, 800-01 (6th Cir. 2021).

To the extent that Mr. Singh is arguing that the agency failed to comply with a properly invoked claims-processing rule, he did not make that argument before the Board, *see* Admin. R., Vol. 1 at 34-36, and therefore we lack jurisdiction to consider it, *see Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010).

## III.    Asylum

### A.    Due Process

Mr. Singh first argues that the Board violated his right to due process because it did not adequately consider the evidence in the record.  He complains that the Board referred only to certain exhibits, and he asserts that he "had a right to an analysis of the supporting documents including current event articles submitted." Pet'r Opening Br. at 14.  But "a quarrel about the level of detail required in the BIA's analysis does not implicate due process." *Birhanu v. Wilkinson*, 990 F.3d 1242, 1252 (10th Cir. 2021) (internal quotation marks omitted).  "The BIA is not required to write an exegesis on every contention.  What is required is that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to

6

perceive that it has heard and thought and not merely reacted." *Maatougui v. Holder*, 738 F.3d 1230, 1242-43 (10th Cir. 2013) (brackets and internal quotation marks omitted). That standard was satisfied here.

### B. Past Persecution

Mr. Singh next argues that the Board erred in determining the attack did not rise to the level of past persecution. Although he asserts this is a question of law reviewed de novo, *see* Pet'r Opening Br. at 15, in this circuit past persecution is a finding of fact that is reviewed only for substantial evidence, *see Ritonga*, 633 F.3d at 974. This standard is restrictive: "[t]he BIA's determination that the applicant is not eligible for asylum must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Yuk v. Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004) (brackets and internal quotation marks omitted). "We do not weigh the evidence or evaluate the witnesses' credibility." *Id.* (ellipsis and internal quotation marks omitted).

The record does not indicate that any reasonable adjudicator would be compelled to find past persecution. As the Board recognized, Mr. Singh was beaten, which resulted in a convalescence period and treatment with over-the-counter medications but not in hospitalization. And the Board acknowledged the testimony of Mr. Singh's expert witness that he suffers from Post-Traumatic Stress Disorder (PTSD). But considering the attack cumulatively with the threats Mr. Singh received, the Board further cited caselaw from this court upholding a finding of no past persecution in circumstances similar to this case. *See Ting Xue*, 846 F.3d

at 1107; *Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009).  Moreover, other

Tenth Circuit cases also have found no past persecution despite petitioners' suffering

injuries from beatings, even repeated beatings.  *See Sidabutar v. Gonzales*, 503 F.3d

1116, 1124 (10th Cir. 2007); *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280-81

(10th Cir. 2005); *Kapcia v. INS*, 944 F.2d 702, 704-05, 708 (10th Cir. 1991).

Mr. Singh argues that the Board did not properly consider his expert's opinion,

but this court cannot reweigh the evidence.  *See Yuk*, 355 F.3d at 1233.  He further

complains that that the Board cited only the State Department country condition

reports.  But there is "nothing improper in [relying] on the State Department

Reports," and they constitute substantial evidence supporting the agency's decision.

*Id.* at 1235-36.  And although Mr. Singh asserts that evidence in the record supports

his position, that does not necessarily mean that the Board's decision is not supported

by substantial evidence.  *See id.* at 1236.

### C.     Government Actors

With regard to whether his attackers were government actors, Mr. Singh points

out that the Board cited to a case that is no longer good law, *Matter of A-B-* (*A-B- I*),

27 I. & N. Dec. 316 (A.G. 2018).  After the Board's decision in this case, the

Attorney General clarified *A-B- I*, *see Matter of A-B-* (*A-B- II*)**,** 28 I. & N. Dec. 199

(A.G. 2021), and then subsequently vacated both *A-B- I* and *A-B- II*, *see Matter of*

*A-B-* (*A-B- III*), 28 I. & N. Dec. 307, 307 (A.G. 2021).  But Mr. Singh makes only

bare assertions that the overruling requires remand; he fails to show how it may have

affected his case.  Notably, the Board cited *A-B- I* as a "see also" cite after citing the

8

well-established (and unchanged) rule in this circuit that "the persecution must have been imposed by the government or by groups which the government is unwilling or unable to control," Admin. R., Vol. 1 at 5 (internal quotation marks omitted).

Mr. Singh also disputes the IJ's conclusion that the attackers were "rogue elements who support the [Badal] party," *id.* at 90, asserting that the IJ misinterpreted the term "miscreant" in the documentary evidence, *id.* at 299, as being synonymous with "rogue," when it is not. This argument essentially asks us to substitute our judgment for that of the agency, which we will not do. *See Woldemeskel v. INS*, 257 F.3d 1185, 1189 (10th Cir. 2001). Mr. Singh's position boils down to proposing that when a member of the same political party as the ruling government attacks a member of a rival party, the attack *must* be considered to be sponsored or condoned by the government. We disagree that a reasonable adjudicator would always be compelled reach that conclusion.

Mr. Singh further argues that the police's refusal to take a report from him establishes that the government condoned and perhaps aided the attack. But again, this court's review is for substantial evidence, not de novo, and we do not reweigh the evidence. The Board considered the fact that the police did not take Mr. Singh's report, but was not persuaded by it. We cannot conclude that every reasonable adjudicator would be compelled to find government involvement in these circumstances. *Cf. Granada-Rubio v. Lynch*, 814 F.3d 35, 40 (1st Cir. 2016) (per curiam) (stating that petitioner's testimony that the police sometimes did not help was insufficient to support a claim that the government acquiesced to torture).

### D.    Future Persecution

Mr. Singh asserts that the Board improperly failed to afford him a presumption of future persecution and to shift the burden to the government to show that relocation was reasonable. *See* 8 C.F.R. § 208.13(b)(1). But the presumption of future persecution rests on a finding of past persecution, *see id.*, which did not exist here. Further, the finding that his attackers were not governmental actors means that he retained the burden regarding relocation. *See Tulengkey*, 425 F.3d at 1281.

Mr. Singh further objects to the Board's conclusion that he could avoid persecution by relocating within India, and that such relocation would be reasonable. He equates this determination with "the idea that petitioner could abandon his adherence to the Akali Dal Mann party and his advocacy for a separate state, Khalistan," because "relocation outside of the Punjab would make it impossible for [him] to engage in his political—religious advocacy." Pet'r Opening Br. at 26. We are not convinced, however, that relocation would require him to relinquish his political beliefs. The constitution of the Mann party, which is part of the administrative record, explicitly provides for members outside of Punjab.

## IV.    Withholding of Removal

Because Mr. Singh fails to satisfy the burden of proof for asylum, he also necessarily fails to satisfy the higher standard for withholding of removal. *See Zhi Wei Pang*, 665 F.3d at 1233.

## V.     Relief under the CAT

Mr. Singh argues that the CAT does not require him to show it is impossible to avoid torture by relocating.  But he did not make this argument before the Board. *See* Admin. R. at 3 n.1 (deeming CAT issues waived because Mr. Singh had "not meaningfully challenged [the] denial [of CAT relief]").  In the context of a CAT claim, failure to exhaust administrative remedies does not divest us of jurisdiction. *See* 8 U.S.C. § 1252(d)(1) (requiring exhaustion of remedies with regard to "a final order of removal"); *Nasrallah*, 140 S. Ct. at 1691, 1694 (recognizing that an order denying CAT relief is not "a final order of removal").  Even without a jurisdictional bar, however, our general rule is that we do not entertain arguments for reversing an agency decision that are raised for the first time in this court.  *See Garcia-Carbajal*, 625 F.3d at 1237.  Mr. Singh gives us no reason to disregard that rule here.

## CONCLUSION

The petition for review is denied.

Entered for the Court

Bobby R. Baldock
Circuit Judge